# United States District Court
### for the Northern District of Oklahoma

---

Case No. 25-cv-517-JDR-JFJ

---

RICO DION GREEN,

*Petitioner*,

*versus*

DAVID ROGERS, *Interim Warden*,

*Respondent*.

---

## OPINION AND ORDER

---

Petitioner Rico Dion Green, a state prisoner appearing through counsel, filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 on September 29, 2025. Dkt. 2. He contends he is unlawfully detained under the criminal judgment entered against him in Tulsa County District Court Case No. CF-2009-830. *Id.* Before the Court is Mr. Green's combined Motion for Stay and Abeyance under *Rhines v. Weber*, 544 U.S. 269 (2005), and Motion to File a Brief in Support of the Petition for a Writ of Habeas Corpus once Petitioner's State Post-Conviction Application is Final. Dkt. 4. Mr. Green asks this Court to stay this habeas proceeding and hold the petition in abeyance while he exhausts available state remedies on the claims raised in the petition. He also asks this Court to grant him leave to file a brief in support of the petition within sixty days of the conclusion of his state postconviction proceedings.

Respondent David Rogers opposes the motion for stay, asserting that a stay is not warranted because all claims in the petition are untimely and, alternatively, that even if *Rhines* applies to petitions raising only untimely

No. 25-cv-517

claims, Mr. Green has not shown that a stay is warranted under *Rhines*'s three-part test. Dkt. 7.

In response to these arguments, Mr. Green primarily contends it would be premature to decide the timeliness of his claims until he has fully developed a record by exhausting his claims in state court and that he has made all showings necessary to obtain a stay under *Rhines*. Dkt. 10.

On careful consideration of the parties' arguments and applicable law, the Court concludes that a stay is not warranted because all claims in the petition are untimely, denies the motion, and dismisses the petition without prejudice for failure to exhaust available state remedies.

## I

## A

In 2009, the State of Oklahoma charged Mr. Green with child abuse murder, in violation of Okla. Stat. title 21, § 701.7.C, for the death of his girlfriend's thirteen-month-old son, G.G. Dkt. 4-1 at 2; Dkt. 7-2 at 2.[1] The State prosecuted Mr. Green on the theory that Mr. Green shook G.G., causing fatal injuries. Dkt. 4-1 at 57. The State's expert witnesses testified that G.G.'s injuries—subdural and subarachnoid hemorrhages, cerebral edema, retinal hemorrhages, and bruising on the face and back of the head—were consistent with Shaken Baby Syndrome/Abusive Head Trauma ("SBS/AHT"). Dkt. 4-1 at 5-6, 10-13; Dkt. 7 at 8. These same expert witnesses testified that a short fall could not have caused G.G.'s injuries. Dkt. 4-1 at 6, 10-13. One of these witnesses testified that he was familiar with Dr. John Plunkett's article *Fatal Pediatric Head Injuries Caused by Short Distance Falls*, 22 Am. J. Forensic Med. & Pathology 1, 1-12 (2001), and was aware that there had been reported cases where short distance falls could cause blunt force trauma. *Id.* at 12 & n.2.

---

[1] The Court's citations refer to the CM/ECF header pagination.

2

No. 25-cv-517

Before trial, one of Mr. Green's trial attorneys, Shena Burgess, researched experts in the field of SBS/AHT because she thought experts may be needed to rebut the State's theory. *Id.* at 57. Ms. Burgess advised Mr. Green that the defense could deny that G.G. was the victim of SBS/AHT and call its own expert witnesses or could proceed to trial without expert witnesses and seek a lesser-included offense instruction on second-degree manslaughter. *Id.* According to Ms. Burgess, Mr. Green opted to proceed to trial without SBS/AHT experts. *Id.* Mr. Green did not testify at trial, but the jury heard evidence from some witnesses that he told family members and detectives that, on the morning G.G. was injured, G.G. had fallen off the bed, Mr. Green had briefly shaken G.G. after a bath to discipline G.G. for putting his mouth on a toilet plunger, and G.G. exhibited signs of injury only after falling down the stairs. *Id.* at 13. The jury also viewed Mr. Green's video statement to detectives. Dkt. 9 (State's Ex. 28). During that statement, Mr. Green initially told detectives that he did not shake G.G. hard enough to cause injuries, that G.G. ate some food and played with toys after the shaking incident, and that G.G. later fell down the stairs. *Id.* Ultimately though, Mr. Green told detectives that he became angry with G.G. and shook him for roughly five to ten seconds after G.G. grabbed the toilet plunger, that G.G. appeared "dazed" immediately after the shaking incident, and that G.G. fell on the carpet by the stairs shortly after the shaking incident but did not fall down the stairs. *Id.*

The jury found Mr. Green guilty, and the trial court sentenced him to life without the possibility of parole. Dkt. 4-1 at 1-2; Dkt. 7-1; Dkt. 7-2 at 9. Mr. Green appealed, and the Oklahoma Court of Criminal Appeals affirmed his judgment and sentence in October 2011. Dkt. 2 at 3; Dkt. 7-3. Mr. Green did not petition the United States Supreme Court for a writ of certiorari. Dkt. 2 at 4. His criminal judgment became final in January 2012.

B

On September 26, 2025, Mr. Green, represented by an attorney with the Oklahoma Innocence Project, applied for postconviction relief in state

3

No. 25-cv-517

district court.[2] Dkt. 2 at 4; Dkt. 4-1 at 1; Dkt. 7-2 at 17; Dkt. 10 at 6. In that application, Mr. Green claims (1) "newly discovered evidence establishes a reasonable probability that [he] is factually innocent of first-degree murder because G.G.'s symptoms at death are consistent with a fall, and inconsistent with shaken baby syndrome," Dkt. 4-1 at 6-16; (2) he "received ineffective assistance of trial counsel and appellate counsel due to counsel's failure to adequately investigate and challenge the State's unfounded theory that G.G.'s injuries could not have been caused by a fall," *id.* at 17-20; and (3) "trial and appellate errors, when considered in a cumulative fashion, warrant a new trial," *id.* at 20-21.

Mr. Green's "newly discovered evidence" comprises: (1) a declaration from a forensic pathologist, dated September 26, 2024, ("Matshes Declaration"), *id.* at 24-49; (2) a report from a biomechanical engineer, dated September 18, 2025 ("Monson Report"), *id.* at 50-56; and (3) an affidavit from one of Mr. Green's trial attorneys, dated September 26, 2025 ("Burgess Affidavit"), *id.* at 57-58. In October 2025, the state district court granted Mr. Green's unopposed request to stay the state postconviction proceedings, citing Mr. Green's need for "additional time to obtain the Medical Examiner's file and allocation of microscopic tissue slides so that a forensic pathologist may review the evidence." Dkt. 7-5. The state district court entered an order on April 22, 2026, lifting the stay and directing the State to respond to Mr. Green's application for postconviction relief within ninety days of the date of the order. *See* Docket Sheet, *State v. Green*, https://www.oscn.net/dockets/GetCaseInformation.aspx?db=tulsa&number=CF-2009-830&cmid=2191314, last visited June 15, 2026.[3] A hearing on Mr. Green's

---

[2] Mr. Green's state postconviction counsel also represents him in this habeas proceeding. Dkt. 2 at 12; Dkt. 4-1 at 22.

[3] "[F]ederal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins.*
*(footnote continued)*

No. 25-cv-517

application for writ of assistance in that matter is scheduled for June 23, 2026. *Id.*

## C

Three days after he applied for postconviction relief, Mr. Green petitioned this Court for federal habeas relief and moved for a stay of the habeas proceeding pending the conclusion of his state postconviction proceedings. Dkts. 2, 4. Mr. Green identifies three claims in the petition. First, he claims his trial attorneys provided constitutionally deficient representation by failing "to adequately investigate the State's SBS/AHT case, and [failing] to utilize expert witnesses to rebut the State's case." Dkt. 2 at 6. In support of this claim, Mr. Green alleges, in part that "[c]ounsel's deficient performance is evident in the jury trial transcripts and prejudice is established by Petitioner's [newly discovered] evidence." *Id.* Second, he claims appellate counsel provided constitutionally deficient representation by failing "to raise trial counsel's failure to properly investigate and present an available defense to the State's SBS/AHT case." *Id.* at 8. Third, he claims "[a]n accumulation of IAC trial and appellate counsel resulted in a violation of due process." *Id.* at 9.[4]

---

*Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979). Because the motion was fully briefed in December 2025, the Court finds it appropriate to take judicial notice of more recent developments in Mr. Green's state postconviction proceeding.

[4] The Court questions whether claim three states a cognizable habeas claim. "Cumulative error analysis is an extension of harmless error and conducts the same inquiry as for individual error, focusing on the underlying fairness of the trial." *Darks v. Mullin*, 327 F.3d 1001, 1018 (10th Cir. 2003) (cleaned up). "This analysis 'aggregates all errors found to be harmless and analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless.'" *Simpson v. Carpenter*, 912 F.3d 542, 602 (10th Cir. 2018) (quoting *United States v. Toles*, 297 F.3d 959, 972 (10th Cir. 2002)). A habeas petitioner can assert a standalone due process claim based on the cumulative effect of errors. *Darks*, 327 F.3d at 1018. But it is not clear that Mr. Green's claim is cognizable because he effectively asks this Court to aggregate alleged constitutional errors from two different state court proceedings, his trial and his direct appeal. *See Tolbert v. Ulibarri*, 325 F. App'x 662, 665 (10th Cir. 2009) ("Because the alleged ineffective assistance of trial and appellate counsel occurred in separate proceedings . . . reasonable jurists *(footnote continued)*

5

No. 25-cv-517

Mr. Green candidly states in his petition that he has not exhausted available state remedies as to any of these claims, as required by 28 U.S.C. § 2254(b)(1)(A), because he first presented them in state court through his pending application for postconviction relief. *Id.* at 6-11. In the portion of the petition that asks him to explain why the one-year statute of limitations prescribed by 28 U.S.C. § 2244(d)(1) does not bar relief if his "judgment of conviction became final over one year ago," Mr. Green states: "The Petition is timely as the new evidence that is the predicate of the IAC trial and appellate counsel claims was obtained on September 26, 2024." *Id.* at 13.

## II

Mr. Green's request for a stay implicates two procedural requirements imposed on state prisoners by the Antiterrorism and Effective Death Penalty Act: first, that state prisoners exhaust of available state remedies before filing a federal habeas petition; and second, that state prisoners file federal habeas claims in compliance with a one-year statute of limitations.

The Supreme Court has long held that, "as a matter of comity," state prisoners must present federal claims in state court before seeking federal habeas relief. *Rose v. Lundy*, 455 U.S. 509, 515 (1982) (citing *Ex parte Royall*, 117 U.S. 241, 251 (1886)). Congress first codified the exhaustion doctrine in 1948, *id.*, and retained the statutory exhaustion requirement in 1996 when it enacted the AEDPA, *Rhines*, 544 U.S. at 274. "Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts . . . state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's

---

would agree that 'there is nothing to cumulate.'" (quoting *Young v. Sirmons*, 551 F.3d 942, 972 (10th Cir. 2008)). Because the Court ultimately concludes that a stay is not warranted and that all claims should be dismissed for failure to exhaust available state remedies, the Court does not decide whether claim three also should be dismissed for failure to state a cognizable habeas claim.

No. 25-cv-517

established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). If a prisoner does not exhaust his federal claims before filing a federal habeas petition, the federal habeas court cannot consider them, much less grant habeas relief. *See Ellis v. Raemisch*, 872 F.3d 1064, 1076 (10th Cir. 2017) ("AEDPA prohibits federal courts from granting habeas relief to state prisoners who have not exhausted available state remedies."). Before 1996, the Supreme Court adopted and enforced a rule of "total exhaustion" by holding that federal district courts must dismiss "mixed" habeas petitions, i.e., petitions that contain both exhausted and unexhausted claims. *Lundy*, 455 U.S. at 522.; *see also Bland v. Sirmons*, 459 F.3d 999, 1012 (10th Cir. 2006) ("Generally, a federal court should dismiss unexhausted claims without prejudice so that the petitioner can pursue available state-court remedies."). Until 1996, dismissal of unexhausted claims posed little problem for state prisoners who could refile a federal habeas petition at any time after they properly exhausted state remedies.

But just over a decade after *Lundy* adopted the "total exhaustion" rule, Congress, through the AEDPA, imposed a new one: a one-year statute of limitations. 28 U.S.C. § 2244(d)(1). In most cases, a state prisoner must file a federal habeas petition within one year of the date on which the prisoner's criminal judgment becomes final at the conclusion of direct review. 28 U.S.C. § 2244(d)(1)(A); *Gonzalez v. Thaler*, 565 U.S. 134, 149-50 (2012). But "[i]f the petition alleges newly discovered evidence . . . the filing deadline is one year from 'the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.'" *McQuiggin v. Perkins*, 569 U.S. 383, 388-89 (2013) (quoting 28 U.S.C. § 2244(d)(1)(D)).[5] Regardless of when it begins to run, the one-year limitations period is tolled for "[t]he time during which a properly filed application for

---

[5] Two other provisions describe circumstances that allow for a limitations period that commences later than the date the judgment becomes final, but neither provision is implicated in this case. *See* 28 U.S.C. § 2244(d)(1)(B), (d)(1)(C).

No. 25-cv-517

State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2).[6] This tolling provision effectively eases the tension created by the exhaustion requirement and the statute of limitations.

Recognizing that same tension, the Supreme Court in *Rhines* revisited *Lundy*'s "total exhaustion" rule. *Rhines*, 544 U.S. at 275-78. *Rhines* held that, in limited circumstances, it is appropriate for a district court to stay a federal habeas proceeding and hold the federal habeas petition in abeyance to allow a petitioner who files a mixed petition to return to state court and exhaust his unexhausted claims without running the risk of returning to federal court only to find his claims barred by the statute of limitations. *Id. Rhines* explained why this procedure is preferable to dismissal under *Lundy*'s total exhaustion rule:

> As a result of the interplay between AEDPA's 1-year statute of limitations and *Lundy*'s dismissal requirement, petitioners who come to federal court with "mixed" petitions run the risk of forever losing their opportunity for any federal review of their unexhausted claims. If a petitioner files a timely but mixed petition in federal district court, and the district court dismisses it under *Lundy* after the limitations period has expired, this will likely mean the termination of any federal review. For example, if the District Court in this case had dismissed the petition because it contained unexhausted claims, AEDPA's 1-year statute of limitations would have barred Rhines from returning to federal court after exhausting the previously unexhausted claims in state court. Similarly, if a district court dismisses a mixed petition close to the end of the 1-year period, the petitioner's chances of exhausting his claims in state court and refiling his petition in federal

---

[6] To benefit from statutory tolling, a petitioner must show that he filed his application for state postconviction or collateral review in accordance with applicable state rules and within the applicable one-year limitations period. *Clark v. Oklahoma*, 468 F.3d 711, 714 (10th Cir. 2006); *Burger v. Scott*, 317 F.3d 1133, 1138-41 (10th Cir. 2003).

> court before the limitations period runs are slim. The prob-
> lem is not limited to petitioners who file close to the AEDPA
> deadline. Even a petitioner who files early will have no way
> of controlling when the district court will resolve the ques-
> tion of exhaustion. Thus, whether a petitioner ever receives
> federal review of his claims may turn on which district court
> happens to hear his case.

*Id.* at 275. But *Rhines* cautioned against overuse of the stay and abeyance pro-
cedure, explaining that a court should grant a stay only if the court finds that
"the petitioner had good cause for his failure to exhaust, his unexhausted
claims are potentially meritorious, and there is no indication that the peti-
tioner engaged in intentionally dilatory litigation tactics." *Id.* at 278.

That same year, in *Pace v. DiGuglielmo*, 544 U.S. 408, 416 (2005), the
Supreme Court confronted the question of "whether a state postconviction
petition rejected by the state court as untimely nonetheless is 'properly filed'
within the meaning of § 2244(d)(2)" and answered that question in the neg-
ative. *Id.* at 410. Relevant here, *Pace* rejected the petitioner's assertion that it
would be unfair to interpret the statutory tolling provision in this manner be-
cause "a 'petitioner trying in good faith to exhaust state remedies may litigate
in state court for years only to find out at the end that he was never "properly
filed,"' and thus that his federal habeas petition is time barred." *Id.* at 416.
Citing *Rhines*, *Pace* suggested a state prisoner concerned that his one-year lim-
itation period might expire before he could exhaust available state remedies
could "fil[e] a 'protective' petition in federal court and ask[] the federal court
to stay and abey the federal habeas proceedings until state remedies are ex-
hausted." *Id. Pace* reasoned that "[a] petitioner's reasonable confusion about
whether a state filing would be timely will ordinarily constitute 'good cause'
for him to file [a protective petition] in federal court." *Id. See also Doe v. Jones*,
762 F.3d 1174, 1179-81 (10th Cir. 2014) (discussing petitioner's "protective"
federal habeas petition and "good cause" under *Rhines*).

No. 25-cv-517

In *Doe*, the United States Court of Appeals for the Tenth Circuit extended *Rhines* beyond mixed petitions by concluding "its rationale is potentially applicable to a petition with wholly unexhausted claims that is protectively filed during the pendency of state postconviction proceedings." *Doe*, 762 F.3d at 1178. *Doe* reasoned that "[p]etitioners with unmixed petitions may run a similar risk of 'forever losing their opportunity' for federal review, depending on the circumstances," and discussed cases from two other circuits applying *Rhines* in cases involving petitions with only unexhausted claims. *Id.* at 1178-81 (quoting *Rhines*, 544 U.S. at 275). *Doe* held, "[w]hether they have mixed or unmixed petitions, petitioners with little chance of exhausting their claims in state court and returning to federal court before the limitations period runs should not be foreclosed from the very mechanism designed to protect against such risk if they can satisfy the *Rhines* standards." *Id.* at 1181. *Doe* described the petition in that case as "the quintessential 'protective petition'" because the petitioner "raised the exact same claims in both his state postconviction application and federal habeas petition, which were filed simultaneously just before the AEDPA statute of limitations had run." *Id. Doe* reasoned that the petitioner sought "only the opportunity to receive a stay and abeyance for the same reasons the Court in *Rhines* adopted the procedure in the first place." *Id.* at 1181. *Doe* further reasoned that if "a petitioner files a protective federal habeas petition during the pendency of state court proceedings because of the short time period remaining on the federal statute of limitations and can meet the *Rhines* three-part test, the total exhaustion rule's protection against needless piecemeal litigation and proceedings whose only purpose is to vex, harass, or delay is not compromised." *Id.* at 1180-81 (cleaned up).

Nonetheless, *Doe* ultimately concluded that the petitioner had not shown the need for a *Rhines* stay. *Doe* noted that the petitioner "relie[d] on the short time remaining on the AEDPA statute of limitations" to support his assertion that he had shown "good cause" under *Rhines*. *Id.* at 1182. But

because the petitioner asserted an actual innocence claim, a claim that the Tenth Circuit had previously held could support equitable tolling of AEDPA's limitations period and that the Supreme Court had then recently held would "provide[] an outright equitable *exception* to AEDPA's statute of limitations," *Doe* reasoned that a stay was unwarranted. *Id.* at 1182-84 (citing *McQuiggin*, 569 U.S. 383).[7] *Doe* stated: "[i]f petitioner does have a substantial actual innocence claim, as he contends, under *McQuiggin* the existence of such a claim will serve as an exception to the AEDPA statute of limitations and he therefore does not have a legitimate concern that the claim will be time barred in federal court." *Id.* at 1182. Critically, *Doe* "focus[ed] solely on petitioner's actual innocence claim with regard to the need for a stay because" the petitioner conceded that his other claims were untimely and, according to *Doe*, the untimely claims did "not implicate the court's concern in *Pace* and *Rhines*." *Id.* at 1176 n.3, 1183 n.12. *Doe* further stated that "*McQuiggin* thus eliminated petitioner's tight-timeline predicament, and he no longer has good cause within the meaning of *Rhines* for his failure to first exhaust his claim in state court before seeking federal court action." *Id.* at 1183.

Synthesizing *Rhines*, *Pace*, and *Doe*, a petitioner may file a protective petition to comply with the one-year statute of limitations and request a *Rhines* stay to avoid having timely claims dismissed because the petitioner has

---

[7] *McQuiggin* held that if a petitioner files a first habeas petition that does not comply with the one-year statute of limitations, a court may apply an equitable exception—the miscarriage of justice exception—to excuse the untimeliness and "allow [the petitioner] to pursue his constitutional claims . . . on the merits notwithstanding the existence of a procedural bar to relief." 569 U.S. at 392. But a court may apply this exception only if the petitioner makes "a credible showing of actual innocence," a showing that ordinarily requires the petitioner to present "new evidence show[ing] 'it is more likely than not that no reasonable juror would have convicted'" him. *Id.* at 392, 395 (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)); *see also Fontenot v. Crow*, 4 F.4th 982, 1031 (10th Cir. 2021) ("To be credible, a claim of actual innocence requires a petitioner to present 'new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.'" (quoting *Schlup*, 513 U.S. 298, 324 (1995))).

No. 25-cv-517

not yet exhausted available state remedies as to some or all claims. But a stay is warranted only if the petitioner shows "good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." *Rhines*, 544 U.S. at 278; *see also Doe*, 762 F.3d at 1181. And the petitioner, as the party requesting a stay, bears the burden to show that a *Rhines* stay is warranted. *Carter v. Friel*, 415 F. Supp. 2d 1314, 1317 (D. Utah 2006).

## III

Relying on *Rhines* and *Doe*, Mr. Green asks this Court to stay this habeas proceeding and hold the petition in abeyance pending the conclusion of his state postconviction proceedings that, he anticipates, will include a postconviction appeal in the OCCA if the state district court denies his application. Dkt. 2 at 6, 11; Dkt. 4. He acknowledges his claims are unexhausted and asserts that if the Court denies his request for a stay and dismisses the petition he will have only one day left in his limitations period to file a timely habeas petition. *See* Dkt. 2 at 13 ("The Petition is timely as the new evidence that is the predicate of the IAC trial and appellate counsel claims was obtained on September 26, 2024."); Dkt. 4 at 2 ("Per Counsel's calculations, the AEDPA statute of limitations runs on September 26, 2025."); *id.* at 3 (suggesting Mr. Green has one day remaining "on the AEDPA limitations period"); Dkt. 10 at 4, 14 (referencing "extremely short 1-day window remaining in the AEDPA limitations period"). Mr. Green contends his circumstances support a *Rhines* stay because (1) he filed a protective petition given the short time remaining in his limitations period and could not exhaust his claims sooner because he only recently obtained evidence to support them; (2) his claims "are potentially meritorious in that they are arguably winning claims involving the ineffective assistance of trial and appellate counsel" and he "alleges cumulative error"; and (3) he has not engaged in intentionally dilatory tactics because "he has already filed his state court post-conviction application which is

12

premised upon evidence which was only recently obtained." Dkt. 4 at 2-4; *see also* Dkt. 10 at 7-13.

Mr. Rogers primarily opposes the motion because, he says, all claims are untimely whether the Court considers timeliness under § 2244(d)(1)(A) or (d)(1)(D). Dkt. 7 at 6-13. Mr. Green appears to rely on § 2244(d)(1)(D) to calculate his one-year limitations period, but he contends it would be premature for this Court to decide the timeliness of his claims in ruling on his request for a stay because he presently is attempting to fully develop his substantive claims and his actual innocence claim in state court. Dkt. 4 at 2; Dkt. 10 at 2-7.

Preliminarily, the Court rejects Mr. Green's argument that it would be premature for this Court to consider the timeliness of his claims. Rather, the Court must address timeliness to adequately consider his request for a *Rhines* stay. *See Rhines*, 544 U.S. at 277 ("Even where stay and abeyance is appropriate, the district court's discretion in structuring the stay is limited by the timeliness concerns reflected in AEDPA."); *Doe*, 762 F.3d at 1180 (noting that the habeas "petitioner had a brief amount of time remaining on his federal statute of limitations clock" and that this "is a significant factor in determining whether a *Rhines* stay is appropriate"). Mr. Green appears to acknowledge this point by repeatedly asserting that a stay is warranted because his limitations period will purportedly expire one day after the OCCA issues a decision on his anticipated postconviction appeal. Nonetheless, he also appears to ask this Court to accept his calculation of the limitations period described in § 2244(d)(1)(D), without considering whether that provision applies to any of his claims. The Court thus begins by determining whether any claims are timely. *Doe*, 762 F.3d at 1180; *see Prendergast v. Clements*, 699 F.3d 1182, 1186-88 (10th Cir. 2012) (adopting view that "§ 2244(d)(1) should be applied on a claim-by-claim basis").

No. 25-cv-517

## A

As Mr. Rogers contends, if § 2244(d)(1)(A) applies, all claims are untimely. Dkt. 7 at 2, 6. Under this provision the one-year limitations period begins to run when the petitioner's state criminal judgment becomes final at the conclusion of direct review or on the expiration of the time to seek direct review. 28 U.S.C. § 2244(d)(1)(A); *Gonzalez*, 565 U.S. at 149-50; *Doe*, 762 F.3d at 1176. Mr. Green's judgment became final in January 2012, ninety days after the OCCA affirmed his convictions on direct appeal, and his limitations period under § 2244(d)(1)(A) expired one year later in January 2013. Dkt. 7 at 2, 6; *see Gonzalez*, 565 U.S. at 149-50; *United States v. Hurst*, 322 F.3d 1256, 1261 (10th Cir. 2003). No statutory tolling is available for this limitations period because Mr. Green did not seek postconviction relief in state court until September 2025, long after his limitations period expired. 28 U.S.C. § 2244(d)(2); *Burger*, 317 F.3d at 1138-41. Thus, if § 2244(d)(1)(A) provides the applicable limitations period for any claims, Mr. Green has no time left to file a timely petition after the conclusion of state postconviction proceedings. So a stay is not necessary to avoid the risks associated with dismissing his unexhausted claims.

## B

Mr. Rogers also persuasively argues that Mr. Green has not shown that § 2244(d)(1)(D) provides the applicable limitations period for any of his claims. Dkt. 7 at 6-13. Under this provision the one-year limitations period begins on "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). But § 2244(d)(1)(D) "provides a petitioner with a later accrual date than section 2244(d)(1)(A) only 'if vital facts could not have been known.'" *Schlueter v. Varner*, 384 F.3d 69, 74 (3d Cir. 2004) (citing *Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2000)); *accord Purkey v. Kansas*, 281 F. App'x 824, 827 (10th Cir. 2008). And "due diligence" is measured by an "'objective standard' that refers to when a [petitioner] 'could have'

14

No. 25-cv-517

discovered the pertinent facts, not when []he actually discovered them." *Madrid v. Wilson*, 590 F. App'x 773, 776 (10th Cir. 2014) (quoting *United States v. Denny*, 694 F.3d 1185, 1189-90 (10th Cir. 2012)). Further, the diligence "required at any particular time depends on what one has notice of at that time." *Denny*, 694 F.3d at 1190. Lastly, so long as a reasonably diligent petitioner knew or could have discovered the facts vital to his claim, it does not matter if the petitioner only later became aware of the legal significance of those facts. *Klein v. Franklin*, 37 F. App'x 681, 684 (10th Cir. 2011) (noting that "while it is possible that [the petitioner] did not understand the legal significance of all these facts, the limitations period begins to run when the petitioner knows of the facts giving rise to the habeas claim; it is not required that he or she understand the legal significance of those facts"); *see also Owens*, 235 F.3d at 359 ("[T]he trigger in § 2244(d)(1)(D) is . . . discovery of the claim's 'factual predicate,' not recognition of the facts' legal significance").

Mr. Green appears to rely on § 2244(d)(1)(D) to assert that his claims are timely when he states in the Petition that the "the new evidence that is the predicate of the IAC trial and appellate counsel claims was obtained on September 26, 2024." Dkt. 2 at 13. As the Court understands it, Mr. Green contends his limitations period under § 2244(d)(1)(D) commenced on September 26, 2024, when he obtained "new evidence" to support his ineffective assistance of counsel claims, and that his limitations period would have expired on September 26, 2025, but for his filing of the application for postconviction relief on that day, leaving him with one day to file a timely petition after the OCCA issues a decision on his anticipated post-conviction appeal. Dkt. 2 at 13; Dkt. 4 at 2-3; Dkt. 10 at 4, 6, 13.

Mr. Rogers contends Mr. Green has not shown that § 2244(d)(1)(D) applies to any claims because "the factual basis of Petitioner's claims was discoverable at the time of his direct appeal in 2011, at the very latest" given that both the Matshes Declaration and the Monson Report merely offer new conclusions about "long-available evidence." Dkt. 7, at 8-10; *see, e.g., Rivas v.*

15

No. 25-cv-517

*Fischer*, 687 F.3d 514, 535 (2d Cir. 2012) ("Conclusions drawn from preexisting facts, even if the conclusions are new, are not factual predicates for a claim."). In response to this argument, Mr. Green vaguely states: "The new evidence Mr. Green currently asserts supports his substantive constitutional claims are declarations by forensic pathologist Dr. Even Matshes and biomechanical engineer Dr. Ken Monson about the unreliability of the State's evidence of SBS/AHT." Dkt. 10 at 2.

Given Mr. Green's insistence that his act of obtaining the Matshes Declaration on September 26, 2024, triggered his one-year limitations period under § 2244(d)(1)(D), the Court considers only whether the Matshes Declaration provided Mr. Green with any facts "vital" to his claims that Mr. Green could not have known and could not have discovered through the exercise of due diligence before September 2024. It did not. The Matshes Declaration indicates that a forensic pathologist reviewed materials from Mr. Green's state criminal proceeding, including medical records, police reports, and trial transcripts, and, based on that review, opined that Mr. Green "may have been wrongfully convicted." Dkt. 4-1 at 26, 47-49. The declaration states that "[i]n the years since this conviction took place, a growing body of literature and practice experience indicate that: a. Short falls (including especially complex short falls such as those that involve falls downstairs) may seriously injure or kill infants and toddlers; and b. Eye bleeding cannot be used to 'diagnose' an intent to cause harm as their origin is unknown, and the subject of hypotheses." *Id.* at 26.

As Mr. Rogers contends, the record in this case shows Mr. Green knew or could have discovered facts regarding the possibility of severe pediatric injuries resulting from short falls, the alleged unreliability of the State's SBS/AHT evidence, and his trial and appellate attorneys alleged failures to investigate and challenge the same, during his 2010 trial or "at the time of his direct appeal in 2011, at the very latest." Dkt. 7 at 8-12. Mr. Green's own allegations, in the Petition and the application for postconviction relief,

No. 25-cv-517

demonstrate that the factual predicate of his ineffective assistance of counsel claims could have been discovered by a reasonably diligent petitioner no later than 2011. For example, Mr. Green alleges trial counsel did not present expert witnesses to rebut the testimony of the State's expert witnesses who (1) described G.G.'s injuries as consistent with SBS/AHT; and (2) testified a short fall would not have caused those injuries. Dkt. 2 at 6. Though neither party submitted the trial transcripts, no one suggests Mr. Green was not present throughout his 2010 trial or that he would have been unaware (1) that his trial attorneys called no expert witnesses to rebut the State's SBS/AHT theory; or (2) that the possibility that a short fall caused G.G.'s fatal injuries was, in fact, explored at trial. Rather, the Burgess Affidavit suggests Mr. Green made an informed decision, after discussing the matter with his trial attorneys, to proceed to trial without expert witnesses. Dkt. 4-1 at 57; *see also* Dkt. 2 at 6 (acknowledging trial testimony from State's expert witnesses that "GG could not have died from a short fall down stairs"); Dkt. 4-1 at 12 (noting one State expert witness's response to a question about whether a short fall down several "carpeted steps" could have caused G.G.'s injuries and his testimony that he was familiar with literature from 2001 recognizing "there had been cases where short distance falls could cause blunt force trauma").

It is even clearer from Mr. Green's own allegations that a reasonably diligent petitioner could have known or could have discovered with due diligence, no later than the OCCA's 2011 decision affirming his judgment, that appellate counsel did not raise an ineffective assistance of trial counsel claim on direct appeal. *See* Dkt. 2 at 8 ("A review of the direct appeal brief shows that appellate counsel raised only record issues and did not file a claim of ineffective assistance of counsel."); *see also* Dkt. 7-3 at 1-2 (OCCA decision describing claims presented on direct appeal).

Lastly, even if Mr. Green's cumulative error claim asserts a cognizable habeas claim, *see supra*, n.4, a reasonably diligent petitioner could have discovered the facts vital to this claim no later than 2011 for these same reasons.

No. 25-cv-517

In sum, Mr. Green has not shown that September 26, 2024, is "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence" and thus has not shown that his claims are timely under § 2244(d)(1)(D).

Mr. Green's insistence that his claims rely on "newly obtained evidence" ignores that nothing in the plain language of § 2244(d)(1)(D) suggests the limitations period begins on the date on which a petitioner obtains new evidence to support a claim. *See In re Young*, 789 F.3d 518, 528 (5th Cir. 2015) (noting that § 2244(d)(1)(D) refers to "the date a petitioner is on notice of the facts which would support a claim, not the date on which the petitioner has in his possession evidence to support his claim"); *Taylor v. Martin*, 757 F.3d 1122, 1124 (10th Cir. 2014) (reasoning that "[t]he 'factual predicate' of [the petitioner's] claim is that Mr. Cheatham lied when he testified on May 6, 2009, not that he swore out an affidavit to that effect in August 2011"); *Craft v. Jones*, 435 F. App'x 789, 791 (10th Cir. 2011) (concluding that an affidavit signed in June 2009 by a fellow prisoner of the petitioner describing the petitioner's use of self-defense during a July 2004 stabbing did not "trigger § 2244(d)(1)(D)" and reasoning that the date of the stabbing, not the date of the affidavit, would have been "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence"); *Bowman v. Martin*, No. CIV-19-542-HE, 2019 WL 7144120, at *8 (W.D. Okla. Nov. 25, 2019) (reasoning that "the relevant date for purposes of § 2244(d)(1)(D) is the date the factual predicate of [the petitioner's] claim of mental illness could have been discovered, not the date Petitioner managed to obtain Dr. Yarbrough's Affidavit"), *report and recommendation adopted*, No. CIV-19-0542-HE, 2019 WL 7116113 (W.D. Okla. Dec. 23, 2019).

Because Mr. Green's claims are not timely under § 2244(d)(1)(D), the Court finds that a stay is unnecessary to avoid the risks associated with dismissal of his unexhausted claims.

No. 25-cv-517

## C

In sum, Mr. Green's one-year limitations period under § 2244(d)(1)(A) expired long before he filed the Petition, and he has not shown that § 2244(d)(1)(D) provided him with a later date for the commencement of the one-year limitations period as to any of his claims. The Court therefore concludes a stay is unnecessary to guard against the risk that Mr. Green will not be able to exhaust his claims and refile a habeas petition before his already expired one-year limitations period expires. Further, if, as Mr. Green contends, he has newly discovered evidence of his actual innocence, he can (like the petitioner in *Doe*) invoke *McQuiggin*'s equitable exception to the AEDPA's statute of limitations if he chooses to file a habeas petition after he exhausts available state remedies, further rendering a *Rhines* stay unnecessary. For these reasons, the Court concludes that the motion shall be denied. And because each of Mr. Green's claims are unexhausted, the Court further concludes that the petition shall be dismissed without prejudice.

IT IS ORDERED that the motion [Dkt. 4] is denied; the petition [Dkt. 2] is dismissed without prejudice because all claims therein are unexhausted; a certificate of appealability is denied; and a separate judgment of dismissal shall be entered herewith.

DATED this 22d day of June 2026.

JOHN D. RUSSELL
*United States District Judge*

19